UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIEL HERNANDEZ,

    Petitioner,

v.

PEOPLE OF THE STATE OF CALIFORNIA,

    Respondent.
                                      /

No. C 08-4085 SI (pr)

**ORDER DENYING STAY, DENYING LEAVE TO AMEND, AND REQUIRING TRAVERSE**

## INTRODUCTION

Gabriel Hernandez, a prisoner of the State of California, filed this habeas action under 28 U.S.C. § 2254 to challenge his 2005 conviction in Santa Clara County Superior Court. The matter is now before the court for consideration of Hernandez's motion for a stay and abeyance, as well as his motion for interim relief. For the reasons discussed below, the court will deny the motion for a stay and abeyance and dismiss the motion for interim relief.

## BACKGROUND

In his original petition, Hernandez asserted three claims that the court found cognizable and ordered respondent to answer: (1) a due process claim based on the insufficiency of the evidence to support the prior conviction sentence enhancements, (2) a due process claim based on an alleged misstatement of the law in the jury instructions regarding the extent of the force he was entitled to use to eject someone from his property, and (3) a due process claim based on

the admission of evidence of a misdemeanor battery conviction. The original petition asserted two additional claims – a selective prosecution claim and an <u>Apprendi</u> claim -- that were dismissed in the order to show cause.

Respondent filed an answer to the petition.

Rather than file a traverse, Hernandez filed a motion for a stay and abeyance in which he asked the court to pause this proceeding while he exhausted state court remedies for six new claims.  The six new claims were: (1) he was denied the right to represent himself; (2) he was denied his right to counsel of choice; (3) he received ineffective assistance of counsel because trial counsel had a conflict of interest and presented false evidence; (4) trial counsel and the prosecutor presented false evidence at the hearing on whether petitioner had sustained two prior strike convictions; (5) the prosecutor engaged in misconduct by not disclosing "the immunity and inside deals . . . that must have been given to the (alleged) victim and the accomplice," and by misstating facts in his closing argument; and (6) petitioner was the victim of "systematic fraud" because his trial and appellate counsel were "fraudulent."  Motion For Stay and Abeyance, ¶. 1-12.  In his reply in support of his motion, Hernandez requested leave to amend to assert these new claims.

Several dates are significant for purposes of the motion for a stay and abeyance: Hernandez's trial occurred in November 2005.  His petition for review was denied by the California Supreme Court on May 23, 2007, and his conviction became final 90 days later, on August 21, 2007. Hernandez's federal petition for writ of habeas corpus was deemed filed on August 18, 2008, just three days before the expiration of the one-year habeas limitations period. Hernandez's motion for a stay and abeyance was deemed filed as of September 9, 2009, the date of the cover letter that came with the motion.  (Docket # 13.)

/ / /

**DISCUSSION**

A.   Motion For Stay And Abeyance

A district court may stay a federal habeas action in which the petitioner has presented both unexhausted and exhausted claims so that the petitioner may exhaust state court remedies as to all claims he wishes to present to the federal court.  See Rhines v. Weber, 544 U.S. 269 (2005).  The district court's discretion to grant a stay is circumscribed by the AEDPA's stated purposes of reducing delay in the execution of criminal sentences and encouraging petitioners to seek relief in the state courts before filing their claims in federal court.  Id. at 277.  Because the use of a stay and abeyance procedure has the potential to undermine these dual purposes of the AEDPA, its use is only appropriate where the district court has first determined that there was good cause for the petitioner's failure to exhaust the claims in state court and that the claims are potentially meritorious.  Id.  Accordingly, a stay is allowed only under these conditions: (1) petitioner must show good cause for his failure to exhaust the claims prior to filing the federal case; (2) the unexhausted claims must not be "plainly meritless"; and (3) petitioner must not have engaged in "abusive litigation tactics or intentional delay."  Id.

In this case, the focus is whether Hernandez has shown "good cause."  Rhines did not describe the criteria for determining whether good cause for failure to exhaust exists.  "Good cause" does not equate with "extraordinary circumstances," as the latter is a more difficult showing to make.  See Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005).  However, the court "must interpret whether a petitioner has 'good cause' for a failure to exhaust in light of the Supreme Court's instruction in Rhines that the district court should only stay mixed petitions in 'limited circumstances.'  Id. at 661.  [The court] also must be mindful that AEDPA aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court.  Rhines, 544 U.S. at 276-77."  Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008).  In Wooten, the court found that the petitioner had not shown good cause for the failure to first exhaust where the petitioner contended that he was "'under the impression'" that his counsel had included all the issues in his petition for review.  Id.  Accepting

3

1 this excuse would make stay-and-abeyance orders routine because almost any petitioner could
2 make this argument – and making stay-and-abeyance orders routine would run afoul of <u>Rhines</u>'
3 instruction that stays only be granted in limited circumstances. <u>Id.</u>

4 Hernandez offers several reasons in an effort to show good cause for failing to exhaust
5 his new claims: he had only has a sixth grade education, he had no attorney to assist him in
6 preparing his petition, his appellate counsel refused to present these claims, he was a participant
7 in the CCCMS[1] prison mental health care system and was a mental health care patient even
8 before his imprisonment which affected his ability to focus and concentrate for long periods of
9 time, and law library access was greatly limited in prison. <u>See</u> Motion For Stay and Abeyance,
10 ¶. 12-13; Reply, ¶. 5-6.

11 The first three reasons are routine circumstances for prisoner-petitioners and do not
12 amount to good cause for failing to exhaust. Hernandez's limited education and lack of an
13 attorney to assist him in presenting his claims in a collateral attack are commonplace
14 circumstances in the prison population. <u>Cf.</u> <u>Rasberry v. Garcia</u>, 448 F.3d 1150, 1154 (9th Cir.
15 2006) (pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary
16 circumstance warranting equitable tolling); <u>Hughes v. Idaho State Bd. of Corrections</u>, 800 F.2d
17 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner not sufficient cause to avoid procedural
18 bar); <u>United States v. Flores</u>, 981 F.2d 231, 236 (5th Cir. 1993) (pro se status, illiteracy, deafness
19 and lack of legal training not external factors excusing abuse of the writ). Although these cited
20 cases involved standard more rigorous than "good cause," they indirectly support the conclusion
21 that the commonplace circumstances of being a <u>pro se</u> petitioner with little education do not
22 amount to good cause. The fact that Hernandez's appellate counsel refused to present these
23 claims on appeal also is a common occurrence. Virtually everyone who has an unexhausted
24 claim has this same circumstance: if counsel presented the claim in the petition for review, it

---

[1] CCCMS is the least intensive level of care available for prisoners in the mental health treatment population. A prisoner in the mental health care delivery system can be an inpatient at the Department of Mental Health, in a mental health crisis bed, in the enhanced outpatient program ("EOP"), or in the clinical case management system ("CCCMS").

4

would have been exhausted. Circumstances such as these that exist for the vast majority of petitioners do not show good cause for excusing non-exhaustion. Allowing a stay for any of them would be contrary to Rhines' command that stays be issued only in limited circumstances. See Wooten, 540 F.3d at 1024.

Hernandez's mental health issues also do not show good cause for his failure to exhaust. The mental health problem he describes (i.e., an inability to focus and concentrate for long periods of time) is nowhere near the kind of serious mental illness that might provide good cause for failing to exhaust. As discussed more in the next paragraph, Hernandez's other activities show that he was not disconnected from reality and instead was rather actively pursuing his civil rights complaint and his inmate grievances. Also, during his trial and appeal, he apparently was a demanding client. His inability to focus and concentrate that did not stop these other activities did not provide good cause for the lengthy delay in seeking to exhaust his new claims.

The one reason Hernandez identifies that requires the most consideration is his statement that his law library access was limited. The restrictions on law library access may in some circumstances provide good cause for failing to exhaust, but there must be a showing of something more than the routine prison limitations on access to the law library. Cf. Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009) ("ordinary prison limitations on . . . access to the law library and copier" do not constitute extraordinary circumstances or make it impossible to file on time). Hernandez has failed to show that any limits on his access to the law library provide good cause for him to fail to exhaust in the two years before he presented his new claims. His evidence actually cuts against his assertion that his delay in presenting the new claims should be excused. His inmate appeals show that he was given *some* access when he filed inmate appeals about limited law library access. He stated in those inmate appeals that he intended to spend his time in the library working on a case other than his criminal case, as he emphasized his need for access to meet deadlines in his civil rights action. His choice to spend his limited law library time working on other cases does not show good cause for him to fail to exhaust his claims regarding his conviction.

The effort to attribute the failure to exhaust to law library problems fails to persuade in the circumstances of this particular case. First, Hernandez knew of at least some of his new claims before his appeal concluded in 2007, more than two years before he sought to present them to this court or a state habeas court. Appellate counsel sent Hernandez a letter dated July 19, 2007 responding to Hernandez's earlier letter that apparently had been written after the California Supreme Court's May 23, 2007 denial of the petition for review. Motion For Stay, Exh. 11, p. 1. The context of counsel's letter indicates that it was responsive to Hernandez's complaints about issues not raised in the appellate briefs. Counsel wrote that a direct appeal generally is limited to the record before the trial court, and therefore matters "pertaining to the failure to call witnesses (which in any case is generally considered a tactical decision by counsel and is rarely reviewed by the appellate court), falsification of documents, and other matters pertaining to counsel's performance at trial generally cannot be addressed for the first time on appeal." Id. Second, in that letter, counsel also advised Hernandez that he (i.e., Hernandez) could file a petition for writ of habeas corpus if he thought there was evidentiary support for his beliefs about errors at the trial; counsel specifically stated that the filing responsibility was Hernandez's and that counsel's involvement had ended when review was denied. Id. Hernandez apparently knew of the claims since no later than July 2007, yet did not try to present them until September 2009.[2] In light of his knowledge of the claims two years earlier, his lengthy delay in exhausting is inexcusable. Not only was Hernandez already aware of the claims by July 2007, he had been informed by the attorney what he needed to do (i.e., file a habeas petition) to have them considered by a court. Third, most of the claims are based on facts that Hernandez, as the

---

[2]Hernandez may have known of the claims even earlier than July 2007, as indicated by the comments in the letters from counsel to him in July 2006 and July 2007. See Motion To Stay, Exh. 12 (first page of July 19, 2007 letter and first page of July 18, 2006 letter). In the July 18, 2006 letter, counsel's statements indicate that counsel and client had an exchange of correspondence about issues to be included on appeal, and that counsel had not raised all the claims Hernandez had urged because the Court of Appeal could review only legal errors and "not reconsider the evidence or the credibility of witnesses.")

Hernandez identified his new claims to this court in September 2009, apparently at the same time he filed a petition in the Santa Clara County Superior Court. The copy of his state petition for the Santa Clara County Superior Court is dated September 9, 2009.

6

client, would have been acutely aware of at trial – such as his claims that his trial attorney was providing ineffective assistance of counsel, that his <u>Marsden</u> motions were being denied, that he was denied his right to represent himself, and that there was false evidence being presented about his criminal background. Taking two years after the appeal failed to getting around to filing the petition raising such claims was unreasonable. Fourth, the materials in the record show that Hernandez was not a novice in the criminal justice system who was unaware of what was occurring to him. By the time this trial occurred, he had already suffered 5 felony convictions and 12 misdemeanor convictions. <u>See</u> CT 307. Hernandez has not shown that the limited availability of the prison law library provided good cause for his failure to exhaust his claims.

Having considered the reasons offered by Hernandez individually and collectively, the court concludes that he has not shown good cause for his failure to exhaust state court remedies for his six new claims. The motion for a stay and abeyance under <u>Rhines</u> is DENIED.

B.  A *Kelly* <u>Stay Would Not Help Petitioner</u>

There is an alternative method to deal with a petitioner who has some unexhausted claims he wants to present in his federal habeas action, but that method would not help Hernandez because he was too late in presenting his new claims. Under the procedure outlined in <u>Kelly v. Small</u>, 315 F.3d 1063 (9th Cir. 2003), "(1) a petitioner amends his petition to delete any unexhausted claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition." <u>King v. Ryan</u>, 564 F.3d 1133, 1134 (9th Cir. 2009) (citing <u>Kelly</u>, 315 F.3d at 1070-71). The district court retains the same degree of discretion it had before <u>Rhines</u> to implement the three-step procedure outlined in <u>Kelly</u>, particularly when "'outright dismissal [of an entire mixed petition would] render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA].'" <u>King</u>, 564 F.3d at 1141-42. A petitioner seeking to avail himself of the <u>Kelly</u> three-step procedure is

7

1 not required to show good cause as under <u>Rhines</u>, but rather must show that the amendment of
2 any newly exhausted claims back into the petition satisfies both <u>Mayle v. Felix</u>, 545 U.S. 644,
3 655 (2005), by sharing a "common core of operative facts" and <u>Duncan v. Walker</u>, 533 U.S. 167
4 (2001), by complying with the statute of limitations. <u>Id.</u> at 1141-43 (dismissal of unexhausted
5 claims was improper because petitioner was not required to show good cause to avail himself
6 of the <u>Kelly</u> three-part procedure but affirming the dismissal as harmless because the
7 unexhausted claims did not relate back to the claims in the original petition that were fully
8 exhausted at the time of filing).

9       The new claims Hernandez wants to exhaust and add by amending the petition do not
10 relate back to the claims in the original petition. The new claims are about self-representation,
11 choice of counsel, the performance of trial and appellate counsel, and prosecutorial misconduct.
12 The original claims were for insufficiency of the evidence on a sentence enhancement,
13 instructional error, and improper admission of evidence of a prior conviction. None of the new
14 claims share a common core of operative facts with the claims contained in the original petition.
15 <u>Compare</u> <u>Hebner v. McGrath</u>, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (no error in denying
16 petitioner leave to amend petition to add new claim that would be untimely where new claim
17 arose from different core of operative facts than claims in original petition and thus did not relate
18 back to original petition), and <u>Rhoades v. Henry (Haddon)</u>, 598 F.3d 511, 519-20 (9th Cir.
19 2010) (denial of leave to amend petition to add claims arising out of alleged misconduct of the
20 prosecutors in another case against defendant based on FBI lab testing was proper because those
21 claims did not relate back to other timely-filed claims about police questioning at the time of his
22 arrest, jailhouse informant testimony, and judicial bias) <u>with</u> <u>Valdovinos v. McGrath</u>, 598 F.3d
23 568, 574-75 (9th Cir. 2010) (<u>Brady</u> claim in amended petition related back to <u>Brady</u> claim in
24 original petition where revision added newly discovered evidence that had not been disclosed
25 by prosecutor; both the original and amended claims were "of the same type" in that both
26 pertained to suppressed exculpatory evidence the government had in its file), <u>and id.</u> at 575-76
27 (IAC claim in amended petition related back to IAC claim in original petition where both claims
28

pertained to counsel's alleged failure to adequately investigate suppressed exculpatory evidence upon learning of it and amended claim "simply adds more evidence that counsel did not uncover").

The determination that Hernandez's new claims do not relate back to the claims in the original petition is critical to the statute of limitations issue. With a few exceptions not relevant here, the habeas statute of limitations, 28 U.S.C. § 2244(d), generally requires that a petition be filed within one year of the date the judgment becomes final. For new claims (such as Hernandez's) that do <u>not</u> relate back, their timeliness is determined by using the date of the filing of the motion to amend (or, here, the motion for a stay in which the claims are first identified), instead of the date of the filing of the original petition. Hernandez's proposed new claims are barred by the statute of limitations because his one-year limitations period deadline was August 23, 2008, and the new claims were not presented until September 2009, more than twelve months too late. Hernandez did not request a stay under <u>Kelly</u>, but doing so would not have changed the outcome for him. Had he requested a stay under <u>Kelly</u>, the proposed new claims would have to be rejected as barred by the habeas statute of limitations. The request for leave to amend is denied.

*   *   *

The court has denied the motion for a stay and abeyance and denied leave to amend to add the time-barred claims. It is time to resume moving forward in this action. Respondent already has filed his answer to the three claims the court found cognizable in the original petition. The next step is for Hernandez to file his traverse. In his traverse, Hernandez should confine his discussion to the three claims the court found cognizable in the original petition.

C.  <u>Motion For Interim Relief</u>

Petitioner filed a motion for a temporary restraining order and preliminary injunction to obtain his legal and personal property from prison officials. He later filed a supplement to the motion, and even later filed a petition to dismiss the motion and the supplement. The motion

9

for a temporary restraining order and preliminary injunction is DISMISSED because petitioner voluntarily withdrew it.  (Docket # 25.)

**CONCLUSION**

Petitioner's motion for a stay and abeyance is DENIED.  (Docket # 15.)  Petitioner's request for leave to amend is DENIED.  Petitioner's motion for temporary restraining order and preliminary injunction is DISMISSED.  (Docket # 25.)

Petitioner must file and serve his traverse no later than **June 18, 2010**.

IT IS SO ORDERED.

DATED: May 6, 2010

SUSAN ILLSTON
United States District Judge