UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL HERNANDEZ,<br><br>    Petitioner,<br><br>  v.<br><br>KELLY HARRINGTON, Acting Warden,<br><br>    Respondent.<br>                                                   / | No. C 08-4085 SI (pr)<br><br>**ORDER DENYING HABEAS PETITION AND DENYING CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

Gabriel Hernandez, a prisoner of the State of California, filed this habeas action under 28 U.S.C. § 2254 to challenge his 2005 conviction in Santa Clara County Superior Court. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition is denied.

## BACKGROUND

I.    The Crimes

On May 27, 2004, Hernandez was charged by information with one count of inflicting corporal injury upon the mother of his child (California Penal Code § 273.5(a);[1] count 1), and felony false imprisonment (§§ 236, 237; count 2). The information further alleged that Hernandez personally inflicted great bodily injury during the commission of the offense in count 1 (§§ 12022.7(e), 1203(e)(3)), that he had two prior serious felony convictions that also

---

[1] Unless otherwise specified, further statutory references are to the California Penal Code.

constituted strikes (§§ 667(a), 1170.12, 1192.7(c)), and that he had served two prior prison terms (§ 667.5(b)). The trial court granted Hernandez's motion to bifurcate the trial on the alleged priors.

Pursuant to California Evidence Code sections 1109 and 1280,[2] the prosecutor sought to introduce evidence at trial of Hernandez's 2002 domestic violence offense through certified documents showing his misdemeanor battery conviction (§§ 242, 243(e)). Hernandez objected to admission of any evidence of the prior and, alternatively, to admission of evidence of the prior by way of certified documents in lieu of live testimony. The trial court overruled his objections and allowed the prior to be proved by way of certified documents.

The California Court of Appeal set out the facts:

### *The Trial Evidence*

Beginning in 1998, defendant and Yolanda Nichols had a five-year romantic relationship during which they had two children. They lived together some of that time, mostly with defendant's mother or his brother. In September 2003, Nichols was staying with defendant periodically at his mother's home, but their relationship was "kind of rocky."

On September 20, 2003, defendant came to Nichols's mother's home to pick up a library book that Nichols had checked out for him at his request. Defendant left after about ten minutes but told Nichols that he would come back later to spend some time with her and the children. Nichols assumed that defendant would return in about one and one-half hours. When defendant had not returned after about two hours, Nichols walked to her aunt's nearby home. Her aunt was not home so Nichols walked back home. On her way back Nichols saw defendant drive by. Later that day, around 6:00 p.m., defendant telephoned Nichols and told her that he was tired of her lies and her "bullshit," that there was nothing for him in San Jose, and that he was moving to Sacramento. Nichols knew that defendant had a child from another relationship and that the mother of the child lived in Sacramento; during their five-year relationship, defendant often told Nichols that he was going to go back to the woman in Sacramento.

Nichols told defendant that if he were to move, he needed to leave the library book. Defendant told Nichols that if she wanted the book, she would have to either get it immediately or drive to Sacramento for it later. After talking with defendant, Nichols talked to defendant's mother about their

---

[2] Section 1109 of the California Evidence Code permits the admission of evidence of the petitioner's offenses involving domestic violence, subject to a balancing test of the evidence's probative value against its prejudicial effect, in accordance with section 352. Cal. Evid. Code § 1109(a)(1). Section 1280 is the public record exception for the hearsay rule. Cal. Evid. Code § 1280.

conversation and her desire to retrieve her things from his mother's home. Defendant's mother told Nichols that she would not be home and that she did not want Nichols to go into her home if nobody else was there. Nichols knew that defendant was calling from his sister-in-law's home, so she asked her mother to drive her there so that she could pick up the library book. When she and her mother arrived at defendant's sister-in-law's home less than ten minutes later, Nichols saw defendant in the driveway putting things in his car. Nichols walked up to him and asked him for the book. Defendant said that he did not have it. Nichols said that he did have the book, that she had given it to him earlier, and that he had it in his backpack. During their argument, defendant got in his car and tried to close the car door but Nichols stood so that she prevented him from doing so. Defendant got out of the car, took the book from his backpack and, with the book's spine facing Nichols, shoved it roughly into the middle of her chest, causing her to stumble backwards.

Nichols returned to her mother's car and asked her mother to take her to defendant's mother's home so that she could retrieve her belongings. Defendant's car was still in his sister-in-law's driveway when they left, but Nichols and her mother saw defendant follow them on their way to defendant's mother's home. Nichols did not see defendant when she arrived at his mother's home, so she jumped out of the car and knocked on the front door. She did not go to the back sliding-glass patio door, which she expected would be unlocked, because of what defendant's mother had said to her earlier. When she saw defendant's car drive by, she ran around to the back of the home and saw defendant going through the backyard patio gate.

Nichols ran to the sliding-glass door and pounded on it, yelling for defendant to return her things to her. Defendant came to the door, looking angry. He opened the door and told Nichols to leave. When she tried to enter the home defendant walked out, grabbed Nichols by the neck, and shoved her backwards. She stumbled backwards but regained her balance and walked towards the door. Defendant swung his closed fist at her head, hitting her four to five times. Nichols stumbled backwards, hit a fence post and fell to the ground, causing her to hurt her tailbone and sustain scratches on her back. She tried to get up and to make him stop, but he started kicking her on her lower back and buttocks. He then grabbed her by her hair and dragged her out of the patio area towards the carport. Nichols heard a woman scream that she was going to call the police, and yelled back at her to do so. Defendant pointed up at a neighbor's window and said, "I'll get you." Defendant let go of Nichols and walked back into the patio area. Nichols got up, dusted herself off and straightened her hair. When she began to follow defendant, her mother came into the patio area from inside the home, picked up a broomstick, and pushed it across defendant's chest. Nichols and her mother went inside the home, but the door to the bedroom where she stayed with defendant was locked. Defendant came inside and told Nichols and her mother to leave, while Nichols continued to say that she wanted her belongings. Defendant then left, and Nichols ran to his car and told him to give her the key. Defendant sat with a blank look on his face and did not answer Nichols. Nichols ran back inside the home, grabbed a spoon from the kitchen, unlocked the bedroom door using the spoon handle, and retrieved her belongings. Nichols then called defendant's mother, waited for her to return home, and left when she asked Nichols to.

The neighbor who witnessed the incident and threatened to call the police did not call the police until the following day. Nichols also reported the incident

3

to the police the following day. In addition to the scratches on her back and a sore tailbone, Nichols sustained abrasions on her temple and a ruptured eardrum which affected her hearing. She was able to regain her hearing following an operation.

A minute order indicating that defendant was convicted of misdemeanor battery of a person in a dating relationship pursuant to sections 242 and 243, subdivision (e), on July 11, 2002, was admitted into evidence as exhibit 10. The parties stipulated that the victim listed in the complaint in the case was Angelica Valdez.

The defense rested without presenting any evidence.

***Verdicts, Findings on the Priors, Motion to Strike the Strikes, and Sentencing***

On November 15, 2005, while the jury was deliberating and outside its presence, defendant waived jury trial on the alleged priors. The jury found defendant guilty of inflicting corporal injury on the mother of his child (§ 273.5, subd. (a)), but found not true the allegation that he personally inflicted great bodily injury on the victim. The jury further found defendant guilty of felony false imprisonment (§§ 236, 237). On November 16, 2005, the court found the prior allegations to be true.

Defendant filed a statement in mitigation on December 2, 2005, requesting that the court strike his priors. The prosecutor filed opposition to the motion. On February 1, 2006, the court denied defendant's request to strike the strike priors, but struck the prison priors and sentenced defendant to the indeterminate term of 25 years to life.

Cal. Ct. App. Opinion, pp. 2-6 (footnote omitted).

II. <u>Procedural History</u>

Hernandez was sentenced under California's Three Strikes Law[3] and received a longer sentence of two concurrent 25-year-to-life prison terms (on counts 1 and 2) because he was found to have suffered two prior convictions that counted as strikes under the Three Strikes Law.

Hernandez's conviction was affirmed by the California Court of Appeal, and his petition for review was denied by the California Supreme Court. He did not seek collateral review in the state courts.

Hernandez then filed this action on August 26, 2008. In his petition, Hernandez asserted

---

[3] California's Three Strikes Law consists of two almost identical statutory schemes -- one adopted by initiative and the other passed by the legislature -- that allow harsher sentences for defendants who are convicted of felonies and have previously been convicted of one or more serious or violent felonies. See Cal. Penal Code §§ 667, 1170.12.

4

three claims that the court found cognizable and ordered respondent to answer: (1) a due process claim based on the insufficiency of the evidence to support the prior conviction sentence enhancements; (2) a due process claim based on (a) an alleged misstatement of the law in the jury instructions regarding the extent of the force he was entitled to use to eject someone from his property, and (b) the trial court improperly instructing the jury on the principles of self-defense pursuant to CALJIC No. 5.55; and (3) a due process claim based on the admission of evidence of a misdemeanor battery conviction. He also asserted two additional claims -- a selective prosecution claim and an Apprendi[4] claim -- that were dismissed. The court issued an order to show cause on the first three issues on February 26, 2009.

Respondent filed an answer to the petition.[5]

Rather than file a traverse, Hernandez filed a motion for a stay and abeyance in which he asked the court to pause this proceeding while he exhausted state court remedies for six new claims.

The court denied Hernandez's motion for a stay and abeyance on May 6, 2010, and ordered him to file his traverse. Hernandez filed a traverse on June 21, 2010.[6] The case is now ready for review on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged action concerns a conviction obtained in Santa Clara County, which is in this district. See 28 U.S.C. §§ 84, 2241(d).

---

[4] Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000).

[5] Hernandez erroneously named the People of the State of California as the respondent in this action; however, the proper respondent is Kelly Harrington, the acting warden at Kern Valley State Prison, where Hernandez is incarcerated. Accordingly, the court directs the clerk of the court to substitute Acting Warden Harrington as the respondent.

[6] The court will only consider Hernandez's arguments in the traverse that pertain to the three claims that were found to be cognizable.

5

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). The parties do not dispute that state court remedies were exhausted for the claims asserted in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

6

erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

I.  Due process claim based on insufficiency of the evidence for sentence enhancements

Hernandez contends that his right to due process was violated because there was insufficient evidence to support the sentence enhancements based on the prior convictions.

The California Court of Appeal described the factual background of this claim as follows:

> At the court trial on defendant's prior allegations, the prosecutor submitted a section 969b packet, which was admitted into evidence as exhibit 11. The exhibit includes an abstract of judgment indicating that defendant was convicted by plea on July 19, 1990, of two counts of violating section 245, subdivision (a)(1), "Assault w/deadly weapon," and was sentenced to two years in state prison on September 25, 1990. No other evidence other than a fingerprint card was submitted to prove that the offenses constituted serious felonies and thus strikes. However, the court found that the section 245, subdivision (a)(1) convictions qualified as serious felonies and strikes under section 1192.7.

Cal. Ct. App. Opinion, p. 16.

Hernandez claims that there is insufficient evidence to support the trial court's finding that he had suffered two prior serious felony convictions and strikes within the meaning of sections 1192.7 and 1170.12. Traverse at 36-37. He argues that the abstract of judgment for his two 1990 convictions included the designation "Assault w/deadly weapon" which was ambiguous and thus insufficient to support the finding that the convictions qualified as strikes. Id. at 38.

The California Court of Appeal rejected the insufficient evidence claim, stating:

> In order to qualify as a strike, the Three Strikes law requires that the prior offense be a violent felony as defined in section 667.5, subdivision (c), or a serious felony as defined in section 1192.7, subdivision (c). (§ 1170.12, subd. (b)(1).) Section 1192.7, subdivision (c)(31), specifically lists "assault with a deadly weapon . . . in violation of Section 245" as a serious felony. Thus, "[a] conviction for assault with a deadly weapon under section 245, subdivision (a)(1) . . . qualifies as a serious felony whether or not the defendant was convicted as a direct perpetrator or as an aider and abettor. [Citation.]" (People v. Banuelos (2005) 130 Cal.App.4th 601, 605 (Banuelos).) However, "a conviction of assault by means likely to cause great bodily injury is not a serious felony unless it also involves the use of a deadly weapon or actually results in the personal inflicting of great bodily injury. [Citations.]" (Ibid.)

7

> Defendant argues that the reference to his crime as "Assault w/deadly weapon" on the abstract of judgment is ambiguous, and thus is insufficient evidence to support the finding that his conviction was for assault with a deadly weapon. He cites Banuelos in support of his claim. In that case, the abstract of judgment was the only document presented to prove the nature of the defendant's prior conviction of violating section 245, subdivision (a)(1). The abstract of judgment listed the offense as "'ASSAULT GBI W/DEADLY WEAPON.'" (Banuelos, supra, 130 Cal. App. 4th at p. 605.) The appellate court found that designation to be ambiguous: "Although the notation could be read to mean that the assault was committed both by means of force likely to produce great bodily injury and with a deadly weapon, it could also be construed as a shorthand description of the criminal conduct covered by section 245, subdivision (a)(1)-assault by means of force likely to produce great bodily injury or with a deadly weapon." (Id. at p. 606.) The court therefore found that there was not substantial evidence that a deadly weapon was in fact used during the commission of the offense. (Ibid.)
>
> The Banuelos court acknowledged that a contrary result was reached in People v. Luna (2003) 113 Cal. App. 4th 395. In that case, the abstract of judgment submitted to prove the nature of the defendant's prior section 245, subdivision (a)(1) conviction listed the offense as "'ASSLT GBI W/DLY WPN.'" (Id. at p. 397.) The appellate court found that the abstract of judgment constituted substantial evidence that the defendant was previously convicted of assault with a deadly weapon as described in section 1192.7, subdivision (c)(31). (Id. at pp. 398-399.)
>
> In this case, the abstract of judgment submitted to prove the nature of defendant's prior section 245, subdivision (a)(1) conviction lists the offense as "Assault w/deadly weapon." Unlike in Banuelos, the designation of the conviction on the abstract of judgment in this case is not ambiguous; it cannot be read to mean that the assault was with a deadly weapon and/or by force likely to produce great bodily injury. Rather, the abstract of judgment can only be read to mean that the assault was with a deadly weapon. Accordingly, the abstract of judgment constituted substantial evidence that defendant was previously convicted of assault with a deadly weapon as described in section 1192.7, subdivision (c)(31). The trial court's findings that defendant has two prior serious felonies that also constituted strikes will not be set aside.

Cal. Ct. App. Opinion, pp. 16-18.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, id. at 324.

A federal court reviewing collaterally a state court conviction does not determine whether

it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993). Rather, the federal court "determines only whether, 'after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson, 443 U.S. at 319). The writ may be granted only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson, 443 U.S. at 324; Payne, 982 F.3d at 338.

The California Court of Appeal's rejection of Hernandez's claim was not contrary to, or an unreasonable application of, clearly established federal law. As mentioned above, the appellate court rejected Hernandez's argument that the designation "Assault w/deadly weapon" was ambiguous and thus insufficient to support the finding that the convictions qualified as strikes. The appellate court distinguished Hernandez's case from other cases, like Banuelos, where the designation on the abstract of judgment was ambiguous because it could be construed as a shorthand description of either assault by means of force likely to produce great bodily injury or assault with a deadly weapon. Here, the abstract of judgment presented to the trial court was substantial evidence Hernandez was convicted of two counts of assault with a deadly weapon as described in section 1192.7(c)(31). The designation on the abstract of judgment was not ambiguous because it listed Hernandez's two prior convictions as "Assault w/deadly weapon," which could only mean that the assault was with a deadly weapon. Therefore, there was sufficient evidence to support the appellate court's finding that Hernandez's two prior convictions qualified as strikes. The appellate court's conclusion was not an objectively unreasonable application of the Jackson standard. Accordingly, the evidence was sufficient to support the sentence enhancement based on two prior convictions qualifying as strikes, and Hernandez is not entitled to habeas relief based on this claim.

II.  Due process claim based on an alleged misstatement of the law in the jury instructions

    A.  CALJIC Nos. 5.40, 5.42, and 5.43

Hernandez claims that he was denied due process because the jury instructions misstated the law with regard to the extent of the force he was entitled to use to eject the victim from his

9

property. The California Court of Appeal outlined the jury instructions at issue in this claim:

> The court instructed the jury pursuant to CALJIC Nos. 5.40, 5.42, and 5.43 as follows.
>
> "The lawful occupant of a residence has the right to request a trespasser to leave the premises. If the trespasser does not do so within a reasonable time, the occupant may use reasonable force to eject the trespasser. The amount of force which may be used to eject the trespasser is limited by what would appear to a reasonable person, under the existing circumstances, to be necessary to prevent damage to the property or physical injury to the occupant." (See CALJIC No. 5.40.)
>
> "A person may defend his home or dwelling against anyone who manifestly intends or endeavors in a violent and riotous manner, to enter that home or dwelling and who appears to intend violence to any person in that home or dwelling. [¶] . . . [¶] The amount of force which the person may use in resisting the trespass is limited by what would appear to a reasonable person in the same or similar circumstances, necessary to resist the violent or unlawful entry. The person is not bound to retreat even though a retreat might safely be made. The person may resist force with force, increasing it in proportion to the intruder's persistence and violence if the circumstances which are apparent to the lawful occupant of the property are such as would excite similar fears and a similar belief in a reasonable person." (See CALJIC No. 5.42.)
>
> "When conditions are present which, under the law, justify a person in using force in defense of property, that person may use that degree and extent of force as would appear to a reasonable person, placed in the same position, and seeing and knowing what the resisting person then sees and knows, to be reasonably necessary to prevent imminent injury threatened to the property. Any use of force beyond that limit is excessive and unjustified, and anyone using excessive force is legally responsible for the consequences thereof." (See CALJIC No. 5.43.)

Cal. Ct. App. Opinion, pp. 6-7.

Hernandez argues that CALJIC No. 5.40 "misstated the law with respect to the extent of the force that a homeowner or possessor may use to defend their property or eject a tresspasser [sic]." Traverse at 11. Specifically, he claims the trial court improperly limited his defense by "erroneously instruct[ing] the jury" regarding the law with respect to the extent of force that he was entitled to use to eject the victim from his property. Id. He argues the instruction improperly focused the jury on the prevention of damage to the property or physical harm to its occupants, which constituted some but not all of the factors that the jury was entitled to consider in determining whether the force used was reasonable. Moreover, he claims that because the instruction failed to advise the jury that the prosecution had the burden of disproving his right to defend the property beyond a reasonable doubt, it failed to properly advise the jury as to the

10

standard to be used in determining the key issue in this case. Finally, he relies on the fact that the standard jury instructions given by the trial court have since been "corrected and superseded," id., noting that the new instruction, CALCRIM No. 3475,[7] omits all references to damage to property or physical injury to occupants, expressly provides that reasonable force is that amount of force a reasonable person would believe is necessary to make the trespasser leave, and properly advises the jury that the burden is on the prosecution to prove beyond a reasonable doubt that he used excessive force, id. at 14-15.

Hernandez also claims that CALJIC No. 5.42 "deals with justified homicide . . . [and] has nothing whatsoever to do with the reasonableness of lesser force to protect one's property from intrusion." Id. at 20. He further states, "Moreover, that instruction squarely conflicts with Civil Code section 50, which provides that '[a]ny necessary force may be used to protect from wrongful injury the person or property of oneself' . . . and which contains no language limiting the use of force based on the supposed intent of the intruder." Id. (emphasis in original).

The appellate court rejected his claim, stating:

> In a criminal case, a trial court has a duty to instruct the jury on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles connected with the evidence and which are necessary for the jury's understanding of the case. As to pertinent matters falling outside the definition of a general principle of law governing the case, it is defendant's obligation to request any clarifying or amplifying instructions. (People v. Estrada (1995) 11 Cal.4th 568, 574.)

---

[7] CALCRIM No. 3475 states:

The (owner/lawful occupant) of a (home/property) may request a trespasser leave the (home/property). If the trespasser does not leave within a reasonable time and it would appear to a reasonable person that the trespasser poses a threat to (the home/property) [or] the (owner/occupants), the (owner/lawful occupant) may use reasonable force to make the trespasser leave. [¶] Reasonable force means the amount of force that a reasonable person in the same situation would believe is necessary to make the trespasser leave. [¶] [If the trespasser resists, the (owner/lawful occupant) may increase the amount of force he or she uses in proportion to the force used by the trespasser and the threat the trespasser poses to the property.] [¶] When deciding whether the defendant used reasonable force, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant used more force than was reasonable. If the People have not met this burden, you must find the defendant not guilty of _____.

11

"In reviewing the purportedly erroneous instructions, 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' [Citations.] In conducting this inquiry, we are mindful that '"a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."' [Citations.]" (People v. Frye (1998) 18 Cal.4th 894, 957.) "Additionally, we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citations.]" (People v. Mills (1991) 1 Cal.App.4th 898, 918.)

CALJIC Nos. 5.40 and 5.42 are correct statements of the law. "Defense of habitation applies where the defendant uses reasonable force to exclude someone he or she reasonably believes is trespassing in, or about to trespass in, his or her home." (People v. Curtis (1994) 30 Cal.App.4th 1337, 1360.) "[A] person assailed in his own house is not bound to retreat from the house to avoid violence, even though a retreat might safely be made." (People v. Hubbard (1923) 64 Cal.App. 27, 35-36.) "The person who is acting in defense of his habitation must first use moderate means before resorting to extreme measures. But he may resist force with force, increasing it in the ratio of the intruder's resistance, without measuring it in golden scales; and whether he has used excessive force or not is a question for the jury. 'The question of the amount of force justified in repelling an assault or maintaining the possession of property . . . is one peculiarly within the province of the jury.' [Citation.]" (Id. at p. 35, italics omitted; see also People v. Miller (1946) 72 Cal.App.2d 602, 606.)

CALJIC Nos. 5.40, 5.42 and 5.43 correctly informed the jury that defendant had the right to request that Nichols leave the premises, and that he could use reasonable force to eject her when she did not do so. The instructions also correctly informed the jury that defendant could resist force with force and that he was not required to retreat. Lastly, the instructions correctly informed the jury that the amount of force that defendant could properly use was limited, and that he could not use more force than was reasonably necessary to prevent injury to person or property. Thus, the instructions, as does CALCRIM No. 3475, correctly informed the jury that a lawful occupant may use reasonable force to eject a trespasser who poses a threat to the property or occupants, and defined reasonable force as that reasonably necessary to protect the property or occupants. As the instructions were a correct statement of the applicable law, counsel cannot be faulted for failing to object to the giving of the instructions. (See Strickland v. Washington (1984) 466 U.S. 668, 687-688; People v. Ledesma (1987) 43 Cal.3d 171, 215.) It was defendant's obligation to request clarifying or amplifying instructions if he felt the instructions failed to list all of the factors the jury was entitled to consider in determining whether the force he used in an attempt to eject Nichols was reasonable. (People v. Estrada, supra, 11 Cal.4th at p. 574.) Yet, defendant does not contend that counsel's failure to request such clarifying or amplifying instructions constituted ineffective assistance.

The court instructed the jurors pursuant to CALJIC No. 17.31 that some instructions given might not apply depending upon what they find to be the facts, and that they were to disregard any instruction they determine to be inapplicable. The court instructed the jurors pursuant to CALJIC No. 1.01 to consider the instructions as a whole and each in light of all the others. The court also instructed pursuant to CALJIC No. 2.90 on the presumption of innocence and its corresponding burden on the prosecution to prove defendant guilty

> beyond a reasonable doubt. In addition, the trial court emphasized the point that the prosecution has the burden to prove defendant guilty when it instructed on other principles of law applicable to the case. For example, in instructing on the allegation of infliction of great bodily injury, the court informed the jurors that the prosecution had the burden of proving the allegation true and that, if they had a reasonable doubt that the allegation was true, they must find it to be not true. Moreover, defense counsel reminded the jury during closing argument about the presumption of innocence and the requirement that the prosecution prove each and every element of the charged offenses. Viewing the instructions as a whole, and in light of the record at trial, we conclude that it is not reasonably likely the jury understood the challenged instructions to mean that defendant had the burden of proving that he used no more force than was reasonable. (People v. Frye, supra, 18 Cal.4th at p. 958.) Accordingly, we find that there is no reasonable probability that, had counsel requested an instruction regarding which party bore the burden of proof regarding defendant's defense-of-property theory, the result of the proceeding would have been different. (Strickland v. Washington, supra, 466 U.S. at p. 695; People v. Ledesma, supra, 43 Cal.3d at p. 215.)

Cal. Ct. App. Opinion, pp. 8-11.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). See, e.g., Stanton v. Benzler, 146 F.3d 726, 728 (9th Cir. 1998) (state law determination that arsenic trioxide is a poison as a matter of law, not element of crime for jury determination, not open to challenge on federal habeas review); Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987) (failure to define recklessness at most error of state law where recklessness relevant to negate duress defense and government not required to bear burden of proof of duress), cert. denied, 488 U.S. 926 (1988). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle, 502 U.S. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.

Although a state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings, see Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988), a criminal defendant is entitled to adequate instructions on the defense theory of the case. See Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the

13

evidence). However, the defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory, United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979), nor to an instruction embodying the defense theory if the evidence does not support it, Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005). Nor is a defendant entitled to instructions on the defense theory of the case, when the state courts have determined that the requested instruction is found to be inapplicable under state law. Hendricks v. Vasquez, 974 F.2d 1099, 1107 (9th Cir. 1992) (citing Estelle, 502 U.S. at 67-68).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. See Walker, 850 F.2d at 475-76 (citing Henderson v. Kibbe, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson, 431 U.S. at 155).

Even if there is an instructional error, a habeas petitioner is not entitled to relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted). If the court is convinced that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. O'Neal v. McAninch, 513 U.S. 432, 437 (1995).

The California Court of Appeal's rejection of Hernandez's due process claim -- relating to CALJIC Nos. 5.40, 5.42 and 5.43 -- was not contrary to, or an unreasonable application of, clearly established federal law. The appellate court held that, even though the instructions had subsequently been revised, the instructions given were correct statements of California law, and therefore proper under state law. Further, this court finds reasonable the appellate court's finding that there was no reasonable likelihood that the jury was misled. CALJIC No. 5.42 includes general language that Hernandez claims is appropriate, stating: "The amount of force which the

14

person may use in resisting the trespass is limited by what would appear to a reasonable person in the same or similar circumstances, necessary to resist the violent or unlawful entry." This instruction along with CALJIC Nos. 5.41 and 5.43 clearly allowed the jury to consider all relevant factors in determining whether Hernandez used excessive force.

This court also finds reasonable the appellate court's conclusion that there was no reasonable likelihood the jury misunderstood the burden of proof. Thus, the use of CALJIC Nos. 5.41, 5.42 and 5.43 was not only proper under state law, it did not so infect the trial that Hernandez was deprived of the fair trial guaranteed by the Due Process Clause. As mentioned above, the jury instructions adequately guided the jury on the consideration of all relevant factors in determining whether Hernandez used excessive force. The jury was also given the standard reasonable doubt instruction, CALJIC No. 2.90. Moreover, as the appellate court stated, "the trial court emphasized the point that the prosecution has the burden to prove defendant guilty when it instructed on other principles of law applicable to the case." Cal. Ct. App. Opinion, p. 10. Despite Hernandez's suggestion to the contrary, when read as a whole, the instructions given informed the jury that it was the prosecution's burden to prove that he used more force than was reasonable. Furthermore, there is no reasonable probability that the result would have been different had Hernandez's counsel requested an instruction regarding which party bore the burden of proof regarding his defense-of-property theory. Accordingly, the instructions given did not violate Hernandez's right to due process; therefore, he is not entitled to the writ on this claim.

B. <u>CALJIC No. 5.55</u>

Hernandez also claims that the trial court improperly instructed the jury pursuant to CALJIC No. 5.55.

The California Court of Appeal described the factual background of this claim as follows:

> Apparently without objection, the court instructed the jury on the principles of self-defense pursuant to CALJIC Nos. 5.50 [self-defense-assailed person need not retreat], 5.51 [self-defense-actual danger not necessary], 5.52 [self-defense-when danger ceases], 5.53 [self-defense not an excuse after adversary disabled], and CALJIC No. 5.55 [plea of self-defense may not be contrived]. CALJIC No. 5.55 informed the jurors that the "right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or

15

apparent necessity of exercising self-defense."

Cal. Ct. App. Opinion, p. 11.

Hernandez contends that "although [CALJIC No. 5.55] accurately stated the law that such defense is unavailable to one who initiates a 'quarrel' and thereby creates the 'need' for its exercise, serious issues exist as to the application of that instruction to this case, since it was undisputed that Nichols, and not petitioner, initiated the dispute." Traverse at 24-25. He claims that the trial court's instruction, therefore, "distorted the facts and the law" and "seriously narrowed the availability of the defense of self-defense." Id. at 25. Specifically, Hernandez argued before the appellate court that it "cast further doubt on the validity of [defendant's] defense of his mother's property that . . . constituted the central issue in this case." Cal. Ct. App. Opinion, p. 11.

The appellate court also rejected his claim relating to CALJIC No. 5.55, stating:

> Issues related to the right of self-defense, including whether defendant provoked a quarrel with the intention of creating a real or apparent need for self-defense, are normally questions of fact to be decided by the trier of fact. (People v. Clark (1982) 130 Cal.App.3d 371, 378, disapproved on other grounds in People v. Blakeley (2000) 23 Cal.4th 82, 92, 96; People v. Holt (1944) 25 Cal.2d 59, 66.) Accordingly, it was for the jury to determine, for example, whether defendant followed Nichols to his mother's house in order to provoke a quarrel.
>
> There was evidentiary support in this case for the giving of CALJIC No. 5.55. The evidence showed that defendant told Nichols on the telephone that he was moving away and that, if she wanted the library book that he had just that morning received from her, she would have to immediately come get it. Yet, when Nichols arrived and asked for the book, he said that he did not have it. When she insisted that he did, he grabbed the book and shoved it at her, causing her to stumble backwards. Then, when Nichols went to defendant's mother's home in order to retrieve some belongings, defendant followed her there and pushed her when she sought entry for that purpose. A reasonable interpretation of this evidence is that defendant initiated a quarrel with Nichols, so the evidence supports the giving of the instruction.
>
> Moreover, even if the court's giving of the instruction was error, it was harmless. "Where, as here, the court gives a legally correct, but irrelevant instruction, the error 'is usually harmless, having little or no effect "other than to add to the bulk of the charge."' [Citation.]" (People v. Lee (1990) 219 Cal.App.3d 829, 841; see also People v. Crandell (1988) 46 Cal.3d 833, 872-873.) As stated above, the court instructed the jurors with CALJIC No. 17.31, telling them that "[w]hether some instructions apply will depend upon what you find to be the facts," and to "[d]isregard any instruction which applies to facts determined by you not to exist." We cannot assume that the jury disregarded that instruction and chose instead to follow an instruction that was

16

> irrelevant as unsupported by the evidence.  (Cf. People v. Olguin (1994) 31 Cal.App.4th 1355, 1381-1382.)

Cal. Ct. App. Opinion, pp. 11-12.

The California Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law.  First, Hernandez concedes that the instructions given were legally sufficient, including CALJIC No. 5.55.  Traverse at 24-25.  Second, the appellate court held that the evidence, outlined above, supported the giving of CALJIC No. 5.55, and that even if an error had occurred it was harmless.  This court finds reasonable the appellate court's harmless error analysis.

As mentioned above, Hernandez is not entitled to relief unless the instructional error "had substantial and injurious effect or influence in determining the jury's verdict."  See Brecht, 507 U.S. at 637.  The Brecht standard applies retroactively.  See, e.g., McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir. 1993) (applying Brecht to pre-Brecht final judgment), cert. denied, 510 U.S. 1020 (1993).  The proper question in assessing harm in a habeas case is, "'Do I, the judge, think that the error substantially influenced the jury's decision?'"  O'Neal v. McAninch, 513 U.S. 432, 436 (1995).  If the court is convinced that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.  Id. at 437.  If, on the other hand, the court is not fairly assured that there was no effect on the verdict, it must reverse.  Id.

Here, the appellate court pointed out that the jury was also instructed with CALJIC No. 17.31, as explained above.  This instruction directed the jury that they could "[d]isregard any instruction which applies to facts determined by you not to exist."  Cal. Ct. App. Opinion, p. 12.  Therefore, this court finds reasonable the appellate court's conclusion that there was no reasonable likelihood the jury "chose instead to follow an instruction that was irrelevant as unsupported by the evidence."  See id.  Hernandez has not shown that an instructional error was committed, let alone that any such error so infected the entire trial that the resulting conviction violated due process.  See Estelle, 502 U.S. at 72.  Accordingly, he is not entitled to the writ on this claim.

III.    Due process claim based on admission of the misdemeanor battery conviction

Hernandez contends his due process rights were violated by the trial court's admission of his misdemeanor battery conviction to show propensity. Traverse at 29-36.

The California Court of Appeal rejected this claim as follows:

> The prosecutor sought to admit certified documents of defendant's 2002 conviction for violating sections 242 and 243, subdivision (e), in lieu of live testimony. "I believe I have the option of presenting live [testimony] in that regard or as a certified conviction. People's preference is to introduce the certified conviction and we believe it is both relevant, probative, it's not remote and it's not a[n Evidence Code section] 352 issue for the court to consider. It's highly probative on this."
>
> Defendant objected to the admission of a certified copy of his 2002 conviction in lieu of live testimony. "Evidence Code section 1109 anticipates live testimony to show the jury that . . . his conduct on a former occasion might be similar to the conduct on this occasion, so therefore the conduct not the conviction is relevant. And under [Evidence Code section] 352 analysis . . . presenting a certified copy of the conviction would not be probative because the jury has no facts in order to do an analysis of whether the conduct on the former occasion was similar to the instant occasion. Furthermore, the court would not be able to do a proper [Evidence Code section] 352 analysis since the court has no facts of the prior conviction to indicate for itself under that analysis whether the conduct is similar enough or whether . . . it would be more prejudicial than probative."
>
> In overruling defendant's objection, the court stated: "Evidence Code section 1109, [subdivision] (c) says this section shall not be construed to limit or preclude the admission or consideration of evidence under any other statute [or] case law." "It seems to me that the prior 2002 conviction would certainly fall under [Evidence Code section] 1109 evidence. I'd allow that to be used. It seems to me that if the District Attorney instead of having live testimony with regard to that incident they want to prove up that incident through the use of Evidence Code section 452.5, that they would be allowed to do that [by] certified copy, so it would be admitted."
>
> . . . .
>
> Evidence Code section 140 defines "evidence" as "testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." Evidence Code section 1109, subdivision (a)(1), provides in pertinent part that, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." "Evidence Code section 1109 allows the introduction of evidence of [a] defendant's commission of prior acts of domestic violence in a criminal action charging [the] defendant with an offense involving domestic violence." (People v. Poplar (1999) 70 Cal.App.4th 1129, 1138.) Since Evidence Code section 1109 does not limit the type of evidence that may be admitted to prove defendant's commission of prior acts of domestic violence to live testimony, it includes "writings," "or other things," such as court records. (Evid. Code, § 140; cf. People v. Wesson (2006) 138 Cal.App.4th 959, 969.) Additionally, Evidence

> Code section 452.5[8] "states a new hearsay exception for certified official records of conviction, which may be offered to prove not only the fact of a conviction, but the commission of the underlying offense." (People v. Duran (2002) 97 Cal.App.4th 1448, 1461.) Accordingly, the trial court did not violate either the letter or the spirit of Evidence Code section 1109 by permitting the prosecutor to introduce the court records regarding defendant's 2002 domestic violence conviction.
>
> The admission of evidence under Evidence Code section 1109 is explicitly subject to Evidence Code section 352. (Evid.Code, § 1109, subd. (a)(1).) Evidence Code section 352 states that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The trial court need not expressly describe the process by which it concluded that the probative value of the evidence outweighed its prejudicial impact. (People v. Catlin (2001) 26 Cal.4th 81, 122.) The court is not required to "engage in an on-the-record evaluation of the factors affecting the weighing process, . . ." (People v. Holt (1984) 37 Cal.3d 436, 453.) The record must show only that the court "performed its obligations." (People v. Mendoza (2000) 24 Cal.4th 130, 178.) The discussion on the record in this case regarding the factors to be considered in an Evidence Code section 352 analysis indicates that the court was well aware of its obligations regarding admission of this evidence and exercised its discretion to admit the evidence.
>
> It is well established that the trial court's discretion under Evidence Code section 352 is broad. A trial court abuses its discretion in admitting evidence only where the probative value of the evidence is insignificant and the prejudicial impact is quite substantial. (See People v. Harris (1998) 60 Cal.App.4th 727, 737-741.) An appellate court will not overturn a trial court's exercise of its discretion in the absence of manifest abuse or upon a finding that the trial court did not appear to understand and fulfill its duties. (People v. Williams (1997) 16 Cal.4th 153, 213; People v. Jennings (2000) 81 Cal.App.4th 1301, 1314.) We find no such abuse of discretion on the record before us. The prior conviction was relevant Evidence Code section 1109 evidence, and presentation of the evidence did not necessitate an undue consumption of time or create a substantial danger of undue prejudice.

Cal. Ct. App. Opinion, pp. 12-15 (footnote in original).

The United States Supreme Court has left open the question of whether admission of propensity evidence, such as evidence of prior crimes, violates due process. See Estelle, 502 U.S. at 75 n.5 (declining to rule on constitutionality of propensity evidence). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly

---

[8] Evidence Code section 452.5, subdivision (b) states: "An official record of conviction certified in accordance with subdivision (a) of Section 1530 is admissible pursuant to Section 1280 to prove the commission, attempted commission, or solicitation of a criminal offense, prior conviction, service of a prison term, or other action, condition, or event recorded by the record."

established as required by AEDPA. Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming Alberni). See, e.g., Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law); Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2002), rev'd on other grounds, 538 U.S. 202 (2003) (noting "Supreme Court has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith").

As discussed above, a district court may not grant habeas relief unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254. Consequently, in the absence of Supreme Court precedent stating the admission of evidence of prior acts violates due process, Hernandez cannot satisfy this requirement. See Alberni, 458 F.3d at 866-67.

Accordingly, Hernandez is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Hernandez may seek a certificate of appealability from the Ninth Circuit Court of Appeals. The clerk shall enter judgment in favor of respondent, and close the file.

The court also directs the clerk to substitute Acting Warden Kelly Harrington as the respondent in this action. See supra note 5.

IT IS SO ORDERED.

DATED: July 1, 2011

_____
SUSAN ILLSTON
United States District Judge